MISSOURI PACIFIC RAILROAD COMPANY, THOMPSON, TRUSTEE, *v.* HOUSE.

4-6955                                    168 S. W. 2d 421

Opinion delivered February 8, 1943.

*Thos. B. Pryor* and *Thomas Harper,* for appellant.

*Partain, Agee & Partain,* for appellee.

CARTER, J. Bennie House was negligently carried beyond her station by the defendant carrier, was forced to wait for a considerable period of time in a cold waiting room for a train back to her station, she caught cold and was sick, and she has recovered judgment for $200 for damages. The defendant appeals, principally upon the ground that it was not proved that the negligence was the proximate cause of the sickness.

At 5:20 p. m. Bennie House got on the train at Van Buren to go to Mulberry, a distance of eighteen miles. Through negligence, the train failed to stop at Mulberry. She was carried on to Ozark and there put off to await the next train back to Mulberry. She got to Ozark around 6:30 or 7:00 o'clock at night, caught the train back to Mulberry around 9:00 o'clock, and got back to Mulberry around 9:30 or 10:00 o'clock. While at Ozark, she waited in the waiting room of the railroad, and she testified that this room was cold, did not have sufficient

fire in it, and that she took cold. She says she began to sneeze while waiting there and that her head commenced to ache and that, with her, these were the signs she was taking a cold. It is shown that she appeared to be in perfect health up until the time she got on the train at Van Buren. When she got off the train at Mulberry later that night a witness testified that she did not look very good and appeared to be tired out and did not look any too well. She testified she took a cold in the unheated waiting room.

This occurred on Saturday night. She was confined to her bed Sunday, went back to her work at Van Buren on Monday, although she had a cold, stayed in bed all day Tuesday, which was Armistice Day, and continued to work during the rest of the week, and was sick from this cold for ten days. She lost no time from work.

The case was submitted to the jury under instructions that allowed recovery only if the jury found that her illness was directly caused by plaintiff being carried past her destination and waiting in a cold room in the depot.

There was a specific objection to this instruction on the ground that there is no evidence of any causal connection between the injury alleged and the negligence alleged.

The defendant further specifically objected to another instruction, on the measure of damages, on the ground that there was no evidence showing any damage and no evidence of any causal connection between the damage alleged and the negligence alleged.

The defendant asked for an instructed verdict, but this was refused, and also asked for an instruction that the plaintiff had failed to prove that her alleged damages were proximately caused by any of the alleged acts of negligence. This was refused.

The appellant contends here that even though it was negligent in carrying the appellee past her station, and even though it was negligent in failing to provide a comfortable waiting room at Ozark, nevertheless, appellee was not entitled to recover because she had failed to

show that the alleged negligence was the cause of her injury and damage. The principal basis of this contention is that such a finding by a jury can only be based upon a doctor's testimony to the effect that such an exposure did cause the cold.

This contention is overruled. In *Kansas City Southern Ry.* v. *Cobb*, 118 Ark. 569, 178 S. W. 383, a woman had been carried past her station and let out at the next station, had gotten wet, had to wait in a cold waiting room and claimed that this exposure resulted in a cold and other illness. This court held that under such circumstances it was a case for the jury as to whether or not her injuries and illness were the proximate result of the railway's failure to keep the waiting room at the station where she was put off in a comfortable condition. It said: "It was unnecessary for the appellee or any witness in her behalf to testify specifically that the ailments which she described resulted from these alleged negligent causes. That was a deduction which the jury was authorized to make from the testimony. . . And in coming to such conclusion, the jury were not exploring realms of speculation, but their findings were only such reasonable and natural inferences as intelligent minds might make from the facts which appellee's testimony tended to prove."

In the case of *St. Louis, I. M. & S. Ry. Co.* v. *Smith*, 117 Ark. 655, 174 S. W. 547, a woman was negligently carried past her station and let off at the next station. If she had been put off at her proper station she would have had a short ride over a good road to her ultimate destination, but by reason of being carried past her station she was forced to drive a greater distance over a rough log road. It was a raw, windy day; she became chilled and contracted a cold which lasted two or three weeks and she suffered pain and inconvenience. This court in sustaining a judgment for damages said: "We think the proof here fairly warranted the jury in finding that appellant was approximately responsible for appellee's illness. . . . We think the jury was authorized in finding from the evidence that the day was not cold enough to have chilled appellee in the distance which

she had prepared to drive, but that she was chilled because of additional exposure. . . . And we think it not conjecture or speculation for the jury to have found that this additional exposure occasioned the injury.''

In a recent case of *Missouri Pacific R. R. et al.* v. *Lueter,* 195 Ark. 985, 115 S. W. 2d 278, a woman was negligently carried from Malvern to Little Rock, remained in the Little Rock station for some hours before being returned to Malvern, and upon arriving at Malvern, about 9:30 at night, she had to walk something over a mile from the station to her home. The night was cold, cloudy and damp. She contracted a cold and brought suit for that and its consequential injuries. The report does not reflect that there was any testimony except that of the woman herself to show that her cold resulted from her exposure. This court said: ''The testimony of appellants' physician sustains appellee's claim that she suffered physical stress and disability following the experience. Appellee's statement that she contracted a cold while walking from the station to her home is not altogether unreasonable; and this, coupled with the doctor's confirmation of subsequent illness, was sufficient to warrant the jury's finding that appellee's exposure was attended by temporary physical impairment.''

The appellant insists that these decisions are in variance with more recent decisions of this court, especially that in the case of *Fort Smith Gas Co.* v. *Blankenship,* 193 Ark. 718, 102 S. W. 2d 75. In that case the gas company had negligently turned off the gas. There was in the house a sick child, who had been sick for approximately a week with a cold and with ''flu.'' The child's mother wrapped it up and carried it to a neighbor's house about three blocks away. Several days later the child developed bronchitis. The child's doctor testified that if the child had been properly clothed bronchitis would not have resulted from its being left in the unheated house, and that he could not say what caused the bronchitis.

That case is distinguishable from the case here involved because there is evidence here that the plaintiff was well and healthy immediately before getting on the train in Van Buren and that her illness began in the cold waiting room at Ozark and that she was obviously ill as soon as she got off of the train after the return journey.

The appellant also complains that the court improperly admitted the evidence of a Mrs. Boomer as to what she saw of the appellee after she got back to Mulberry from Ozark. The witness' testimony, as abstracted by the appellant, is as follows: "That on November 8th she was working at a store in Mulberry and remembers Miss House coming into the store; that she didn't look very good and appeared to be tired out and was hoarse; that she didn't look any too well; that witness let Miss House's brother take her home in witness' car."

There was nothing improper or prejudicial in such testimony. It was certainly competent to prove that when Miss House finally got to Mulberry she did not look well. No question of damages from inconvenience was submitted to the jury.

The appellant further complains that the amount of damages awarded by the jury is excessive. It is impossible to determine exactly the amount of money which is a fair compensation for the pain and inconvenience of an illness such as the plaintiff suffered. This court is of the opinion that it cannot be held that the amount fixed by the jury is not within the bounds of reason. If not, the court has no right to substitute its judgment for that of the jury.

The judgment is affirmed.